Case 1:22-cr-20400-RS  Document 1  Entered on FLSD Docket 08/30  FILED BY MML D.C.

Aug 29, 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**22-20400-CR-SMITH/LOUIS**
Case No. _____

18 U.S.C. § 1349
18 U.S.C. § 981(a)(1)(C)

UNITED STATES OF AMERICA

vs.

PAVEL RAMON RUIZ HERNANDEZ,
    a/k/a "Pavel Ruiz,"

        Defendant.
_____/

## INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Information:

### Relevant Terms

1.    A "merchant cash advance," also called an "MCA," is a form of alternative financing that provides a business fast access to funds based on their previous income or sales. An MCA company typically provides the client business, referred to as a "merchant," upfront financing in exchange for a portion of the merchant's future receivables at a discount or fixed periodic payments taken directly from the merchant's bank account. MCA financing is typically used by small and medium-sized businesses in need of short-term financing. Although MCA financing is often more expensive than traditional small business loans, it is often faster and easier to obtain.

2.    A "*Ponzi*" or "*Ponzi* scheme" is an investment fraud scheme that involves the payment of claimed returns to existing investors from funds contributed by new investors. *Ponzi*

scheme organizers often solicit new investors by promising to invest funds in opportunities claimed to generate high returns with little or no risk. In many *Ponzi* schemes, the participants focus on attracting new investments to make promised payments to earlier-stage investors to create the false appearance that investors are profiting from a legitimate business. *Ponzi* schemes require a consistent flow of new investor funds to continue and tend to collapse when it becomes difficult to obtain sufficient new investor funds or when a large number of investors ask for their investment principal back.

### The Defendant and the Relevant Entities

3. MJ Capital Funding, LLC ("MJ Capital") was a Florida limited liability company with its listed place of business in Pompano Beach, Florida. Co-conspirator 1 founded MJ Capital in or around June 2020.

4. Pavel Ruiz MJCF LLC ("Pavel Ruiz MJCF") was a Florida limited liability company with its listed place of business in Plantation, Florida. Defendant **PAVEL RAMON RUIZ HERNANDEZ, a/k/a "Pavel Ruiz,"** founded Pavel Ruiz MJCF in or around March 2021 and was its sole member.

5. Co-conspirator 1, a resident of Broward County, Florida, was an authorized member, and the President and Chief Executive Officer ("CEO") of MJ Capital. Co-conspirator 1 exercised ultimate control over the operations of MJ Capital and maintained significant involvement in the company's daily operations.

6. **PAVEL RAMON RUIZ HERNANDEZ**, a resident of Broward County, Florida, helped Co-conspirator 1 manage the operations of MJ Capital.

## COUNT 1
### Conspiracy to Commit Wire Fraud
### (18 U.S.C. § 1349)

1.　The General Allegations section of this Information is realleged and fully incorporated herein by reference.

2.　From at least as early as in or around March 2021, and continuing through on or about August 12, 2021, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendant,

**PAVEL RAMON RUIZ HERNANDEZ,**
a/k/a "Pavel Ruiz,"

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate, and agree with Co-conspirator 1, and with others known and unknown to the United States Attorney, to knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing such pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing such scheme and artifice to defraud, did knowingly transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

### Purpose of the Conspiracy

3.　It was a purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by: (a) inducing investors to invest in MJ Capital through materially false and fraudulent representations and promises concerning the nature of the MJ Capital investment, the finances, operation, and profitability of MJ Capital, and the use of investor funds;

(b) diverting investor funds to bank accounts under their control; and (c) using investor funds for their own personal use and benefit, and to make payments to earlier investors.

### Manner and Means of the Conspiracy

The manner and means by which the defendant and his co-conspirators sought to accomplish the purpose and object of the conspiracy included, among others, the following:

4. MJ Capital purportedly engaged in the business of providing merchant cash advances (MCAs) to businesses in Florida and throughout the United States in exchange for agreed upon periodic payments over a specified period of time. MJ Capital promoted its MCAs as a short-term, high-cost, alternative financing solution for small and medium-sized businesses that needed fast up-front funding.

5. **PAVEL RAMON RUIZ HERNANDEZ** and his co-conspirators, directly and indirectly, fraudulently solicited money from investors purportedly to fund MJ Capital's MCAs by falsely promising significant returns, typically 10% per month (an annual rate of 120%).

6. **PAVEL RAMON RUIZ HERNANDEZ** and his co-conspirators, through MJ Capital, falsely and fraudulently claimed that MJ Capital's investment offerings permitted investors to "purchase" a portion of merchants' future receivables. MJ Capital instructed its personnel and affiliates to use the term "merchant" instead of "borrower," "order payment" instead of "loan amount" or "principal," "purchaser" instead of "investor," and "purchase of future receivables" instead of "investment."

7. **PAVEL RAMON RUIZ HERNANDEZ** and his co-conspirators, directly and indirectly, recruited individuals to solicit investors to invest in MJ Capital's investment offerings at various locations in Miami-Dade and Broward Counties, in the Southern District of Florida. As part of the effort to raise additional investor funds, **PAVEL RAMON RUIZ HERNANDEZ** and

his co-conspirators incentivized these individuals by offering and paying substantial commissions, typically 10% per month of the amount of investor funds raised (an annual rate of 120%).

8. Persons raising funds for MJ Capital were called "account representatives." Successful account representatives could be promoted to "managers." Account representatives and managers were organized into groups within MJ Capital, with each group overseen by a "board member." **PAVEL RAMON RUIZ HERNANDEZ** was a board member of MJ Capital.

9. To induce investors to invest in MJ Capital, **PAVEL RAMON RUIZ HERNANDEZ** and his co-conspirators, directly and indirectly, made materially false and fraudulent statements and representations to investors concerning the nature of the MJ Capital investment, the finances, operation, and profitability of MJ Capital, and the use of investor funds, including, among others, the following:

### Materially False Representations

(a) that the investor's money would be used to fund MJ Capital's MCAs;

(b) that investor returns would be paid from the profits of MJ Capital's MCA business;

(c) that MJ Capital had a minimal rate of default on its MCAs and that it had a system in place to collect payment on the MCAs, including using underwriters to vet merchants soliciting loans, liens to secure loans, and lawyers to collect payment when necessary; and

(d). that MJ Capital's MCA business was sufficiently robust and profitable to be the source of the investor returns and to guarantee investors' capital.

10. **PAVEL RAMON RUIZ HERNANDEZ**, his co-conspirators, and others, on behalf of MJ Capital, provided and entered into written investment agreements with investors.

These investment agreements made materially false and fraudulent statements and representations to investors, including concerning the use of investor funds and the source of investor returns.

11. Based on false and fraudulent representations, **PAVEL RAMON RUIZ HERNANDEZ** received and collected MJ Capital investor funds in cash and deposits via check and electronic bank transfers, including interstate wire communications, into various accounts, including Pavel Ruiz MJCF's bank accounts,.

12. Notwithstanding **PAVEL RAMON RUIZ HERNANDEZ** and his co-conspirator's false and fraudulent representations to investors regarding the nature of the MJ Capital investment, the finances, operation, and profitability of MJ Capital, and the use of investor funds, MJ Capital only funded a few MCAs and failed to earn anywhere near the profits it needed to pay the investor returns and principal promised investors. As a result, **RUIZ HERNANDEZ** and his co-conspirators paid investor returns by running a large *Ponzi* scheme, paying existing investors using new investor funds.

13. While continuing to solicit new investments, **PAVEL RAMON RUIZ HERNANDEZ** and his co-conspirators misappropriated existing MJ Capital investor funds for their own personal use and benefit. In fact, **RUIZ HERNANDEZ** misappropriated millions of dollars to pay for, among other things, personal expenses, luxury goods, vehicles, vacations, and entertainment, and to make personal investments.

14. **PAVEL RAMON RUIZ HERNANDEZ** and his co-conspirators never informed MJ Capital investors that they diverted investor funds for their own personal use and benefit and to pay investor returns. Instead, **RUIZ HERNANDEZ** and his co-conspirators falsely and fraudulently represented to investors that investment funds were being used to fund MCA loans.

15. As a result of **PAVEL RAMON RUIZ HERNANDEZ**'s and his co-conspirators'

material misrepresentations regarding the profitability of MJ Capital's MCA business and the use of investor funds, from in or around March 2021, through in or around August 2021, **RUIZ HERNANDEZ** falsely and fraudulently obtained at least approximately $42,942,000 dollars from retail investors in the Southern District of Florida and elsewhere.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE
### (18 U.S.C. § 981(a)(1)(C))

1. The allegations of this Information are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **PAVEL RAMON RUIZ HERNANDEZ**, has an interest.

2. Upon conviction of a violation of Title 18, United States Code, Section 1349, as alleged in this Information, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

3. The property subject to forfeiture as a result of the alleged offense includes, but is not limited to, the following:

   a. A forfeiture money judgement in the sum of $42,942,000 in U.S. currency, which sum represents the value of the property that is subject to forfeiture;

   b. All funds on deposit in JP Morgan Chase account number 410633486, held in the name of Pavel Ruiz;

   c. All funds on deposit in Citibank account number 3198002403, held in the name of Pavel Ramon Ruiz Hernandez, or seized from this account on or about September 2, 2021;

   d. All funds on deposit in Citibank account number 3490145105, held in the name of Pavel Ruiz MJCF LLC, or seized from this account on or about September 2, 2021;

  e. All funds on deposit in Citibank account number 3290405412, held in the name of Pavel Ruiz MJCF LLC, or seized from this account on or about September 2, 2021;

  f. All funds on deposit in Wells Fargo account number 144810330, held in the name of Pavel R Ruiz Hernandez;

  g. All funds on deposit in Venmo account @Pavel-Ruiz-1, held in the name of Pavel Ruiz;

  h. All funds on deposit in Venmo account @PavelRuizMJCF, held in the name of Pavel Ruiz MJCF LLC; and

  i. One (1) 2021 Audi RS7, bearing vehicle identification number WUAPCBF24MN907100.

4. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

  a. cannot be located upon the exercise of due diligence;

  b. has been transferred or sold to, or deposited with, a third party;

  c. has been placed beyond the jurisdiction of the court;

  d. has been substantially diminished in value; or

  e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code, Section 2461(c)

_____
JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

_____
ERIC E. MORALES
ASSISTANT U.S. ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

PAVEL RAMON RUIZ HERNANDEZ,
a/k/a "Pavel Ruiz,"
_____/
Defendant.

**Court Division** (select one)
- ☑ Miami    ☐ Key West    ☐ FTP
- ☐ FTL      ☐ WPB

CASE NO.:

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

New Defendant(s) (Yes or No) ____
Number of New Defendants ____
Total number of New Counts ____

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.

3. Interpreter: (Yes or No) No
   List language and/or dialect: ____

4. This case will take  0  days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)
   - I   ☑ 0 to 5 days
   - II  ☐ 6 to 10 days
   - III ☐ 11 to 20 days
   - IV  ☐ 21 to 60 days
   - V   ☐ 61 days and over

   (Check only one)
   - ☐ Petty
   - ☐ Minor
   - ☐ Misdemeanor
   - ☑ Felony

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____  Case No. _____

7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Magistrate Case No. _____

8. Does this case relate to a previously filed matter in this District Court? (Yes or No) No
   If yes, Judge _____  Case No. _____

9. Defendant(s) in federal custody as of _____

10. Defendant(s) in state custody as of _____

11. Rule 20 from the _____ District of _____

12. Is this a potential death penalty case? (Yes or No) No

13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No

14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No

By: *Eric Morales* (signature)
Eric E. Morales
Assistant United States Attorney
FLA Bar No.    1010791

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name: **PAVEL RAMON RUIZ HERNANDEZ, a/k/a "Pavel Ruiz"**

Case No: _____

Count #: 1

Title 18, United States Code, Section 1349

Conspiracy to Commit Wire Fraud
* **Max. Term of Imprisonment:** 20 years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $250,000 fine or twice the gross loss amount

*Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.