UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-20400-CR-SMITH/LOUIS

UNITED STATES OF AMERICA

vs.

PAVEL RUIZ,

                Defendant.

_____/

## PLEA AGREEMENT

The United States Attorney's Office for the Southern District of Florida ("this Office") and Pavel Ruiz (hereinafter referred to as "Defendant") enter into the following agreement:

1. Defendant agrees to plead guilty to Count 1 of the Information, which count charges Defendant with Conspiracy to Commit Wire Fraud, in violation of Title 18, United States Code, Section 1349.

2. Defendant is aware that the sentence will be imposed by the Court after considering the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). Defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a pre-sentence investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. Defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed and may raise or lower that advisory sentence under the Sentencing Guidelines. Defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not

bound to impose a sentence within that advisory range; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range. Knowing these facts, Defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense identified in paragraph 1 and that Defendant may not withdraw the plea solely as a result of the sentence imposed.

3. Defendant also understands and acknowledges that the Court may impose a statutory maximum term of imprisonment of up to 20 years, followed by a term of supervised release of up to three (3) years. In addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $250,000 or double the gross gain or gross loss, and must order restitution.

4. Defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 3 of this agreement, a special assessment in the amount of $100 will be imposed on Defendant. Defendant agrees that any special assessment imposed shall be paid at the time of sentencing. If Defendant is financially unable to pay the special assessment, Defendant agrees to present evidence to this Office and the Court at the time of sentencing as to the reasons for Defendant's failure to pay.

5. This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning Defendant and Defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

6. This Office agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to Defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon Defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing Defendant's offense level is determined to be 16 or greater, this Office will make a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that Defendant has assisted authorities in the investigation or prosecution of Defendant's own misconduct by timely notifying authorities of Defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. This Office, however, will not be required to make this motion and this recommendation if Defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement, in addition to the misrepresentations/omissions discussed with defense counsel regarding funds traceable to Chase Bank account ending 3486; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

7. Defendant agrees to plead guilty to Count 1 of the Information, which count charges Defendant with Conspiracy to Commit Wire Fraud, in violation of Title 18, United States Code, Section 1349. Defendant agrees and understands that this charge involves Defendant's conduct, and the conduct of others, from in or about June 2020 through on or about August 12, 2021, in an investment fraud scheme, operated out of MJ Capital Funding, LLC and MJ Taxes and More Inc.,

whereby people were enticed to invest on the promise that their investment capital would be used to fund small business loans and that they would be paid returns from the revenue thereby generated, when in truth new investment capital was used to pay existing investors. The plea entered by Defendant pursuant to this agreement resolves Defendant's federal criminal liability in the Southern District of Florida growing out of Defendant's criminal conduct in the investment fraud associated with MJ Capital Funding, LLC and MJ Taxes and More Inc. known to the United States Attorney's Office for the Southern District of Florida, as of the date of this plea agreement, including but not limited to the scheme described herein and laundering of proceeds of that scheme.

8. This Office and Defendant agree that, although not binding on the probation office or the Court, they will jointly recommend that the Court make the following findings and conclusions as to the sentence to be imposed:

(1). Base Offense Level: That the Base Offense Level under Section 2B1.1(a)(1) of the Sentencing Guidelines is 7.

(2). Loss: That the relevant amount of actual, probable or intended loss under Section 2B1.1(b)(1) of the Sentencing Guidelines resulting from the offense committed in this case is more than $25,000,000 but less than $65,000,000.

(3). That the Offense involved 10 or more victims and resulted in financial hardship to one or more victims. The offense level should increase by two (2) levels pursuant to Sentencing Guidelines Section 2B1.1(b)(2)(A).

(4). Sophisticated Means: That Defendant did not intentionally engage in or cause especially complex or especially intricate offense conduct pertaining to the execution or concealment of the offense to constitute sophisticated means, pursuant to Section 2B1.1(b)(10)(C) of the Sentencing Guidelines.

(5). <u>Role</u>: That Defendant should <u>not</u> receive an adjustment for role in the offense pursuant to Sections 3B1.1 or 3B1.2 of the Sentencing Guidelines.

(6). <u>Abuse of Trust and Use of Special Skill</u>: That Defendant should not receive a two-level increase pursuant to Section 3B1.3 of the Sentencing Guidelines.

(7) That no other adjustments apply.

9. This Office and Defendant stipulate to, and agree not to contest, the facts in the following Factual Proffer, and stipulate that such facts, in accordance with Rule 11(b)(3) of the Federal Rules of Criminal Procedure, provide sufficient factual basis for the plea of guilty in this matter. Because the factual basis set forth in the Factual Proffer has the limited purpose of supporting Defendant's guilty plea to the charge cited in paragraph 1, the Factual Proffer does not purport to represent all facts and circumstances relating to Defendant's participation. The Factual Proffer is as follows:

> If this case had proceeded to trial, the United States would prove beyond a reasonable doubt that since at least June 2020, Co-conspirator 1 operated an investment Ponzi scheme through MJ Taxes and More, Inc. and MJ Capital Funding LLC (hereinafter "the MJ Companies"), which scheme utilized interstate wire communications, including emails and electronic bank transfers. At least as early as March 2021, Defendant joined Co-conspirator 1 in a conspiracy to commit wire fraud.
>
> Under Co-conspirator 1's management, the MJ Companies solicited investments from the public by offering investment contracts representing that the investor's money would be used to fund small business loans called Merchant Cash Advances ("MCAs"). The MJ Companies' investment contracts included these representations: (1) guaranteed returns, typically 10% per month; and (2) guaranteed repayment of investment principal.
>
> Defendant learned of the MJ Companies' purported investment opportunity through his acquaintance with Co-conspirator 1. After conversations with Co-conspirator 1 about investing in MCAs, Defendant entered into an investment contract with the MJ Companies. Thereafter, Defendant became involved in soliciting new investors for the MJ Companies in exchange for the payment of commissions. Defendant became one of the "Directors" in the MJ Companies' hierarchy, which entailed overseeing a group of Managers and Account

Representatives who solicited investors and raised funds in exchange for commissions.

The MJ Companies encouraged existing investors to refer other investors by offering to pay commission for referrals. The MJ Companies also allowed investors to become affiliated as "Account Representatives" to raise new investment funds in exchange for commission-based compensation, typically 10% per month on the amount of funds raised. The most productive account representatives were promoted to "Managers."

Investors were solicited in several ways, including via affiliated Account Representatives, social media, and the MJ Companies' website. Whatever the form of the solicitation, the message was the same: the MJ Companies would use the investor's money to fund MCAs that paid a high rate of return, and the investor would receive periodic payments paid from a share of the returns generated by MCAs.

Defendant, Co-conspirator 1, and others represented to investors, directly and through the solicitation methods described above, that the MJ Companies' generated revenue from the MCA loans to pay the commissions and returns to investors. It was represented to investors that the MJ Companies specialized in MCA funding for businesses, that there was a team of underwriters that vetted merchant loan applicants, and that defaults were negligible so that the MJ Companies could guarantee investor's capital.

The representations that the MJ Companies were using investor money to fund MCAs, that MCAs generated revenue from which investor returns were paid, and that investor money was secure were lies. In fact, the MJ Companies earned little revenue from MCAs and, with rare exceptions, the MJ Companies did not use investor funds to make MCA loans. Therefore, the MJ Companies' ability to pay investors the promised returns and repayment of principal depended on their ability to continue to raise new investor money, use the new funds raised to pay existing investment contracts and commissions, and convince existing investors to roll over their investments into a new investment agreement, thus deferring the MJ Companies' obligation to repay investors' back their principal.

By at least as early as March 2021, Defendant was aware that the MJ Companies' representations about its investment offerings were lies, and that Co-conspirator 1 was operating a fraud scheme at the MJ Companies. Defendant willfully joined in a conspiracy with Co-conspirator 1 in order to continue making money for himself. On or about March 4, 2021, Defendant established Pavel Ruiz MJCF LLC, a Florida limited liability company, in order to facilitate the receipt and handling of fraudulently obtained investors proceeds.

Defendant helped keep the Ponzi scheme going by continuing to raise new capital from investors, overseeing the solicitation activities of Managers and

Account Representatives in his group, accepting and collecting large cash investments, and promoting the false representations of the MJ Companies as an investment vehicle to investors and to Account Representatives.

Defendant fraudulently obtained, directly and indirectly through others, at least approximately $42,942,000 in proceeds from investors during his involvement in the conspiracy, thereby causing more than $25 million in losses to investors. As part of this illicit activity, Defendant deposited or caused to be deposited fraudulently obtained investor proceeds in the following accounts:

| Institution | Account Number | Account Name |
| --- | --- | --- |
| JP Morgan Chase | 410633486 | Pavel Ruiz |
| Citibank | 3198002403 | Pavel Ramon Ruiz Hernandez |
| Citibank | 3490145105 | Pavel Ruiz MJCF LLC |
| Citibank | 3290405412 | Pavel Ruiz MJCF LLC |
| Wells Fargo | 144810330 | Pavel R Ruiz Hernandez |
| Venmo | @Pavel-Ruiz-1 | Pavel Ruiz |
| Venmo | @PavelRuizMJCF | Pavel Ruiz MJCF LLC |

With the fraudulent proceeds he obtained, Defendant also purchased the following vehicle:

| Vehicle Description | Vehicle Identification Number | Title/Registered Owner |
| --- | --- | --- |
| 2021 Audi RS7 | WUAPCBF24MN907100 | Pavel Ruiz |

Defendant, who had access to the MJ Companies' bank accounts, also arranged for the payments of returns to investors and commissions to those raising funds, including via cash payments. For this, Defendant was paid large commissions by the MJ Companies, and kept and used investor funds to pay for travel, luxury goods, and social outings while promoting the MJ Companies' lifestyle.

10. In the event that for any reason Defendant withdraws from this agreement prior to or after pleading guilty to the charged identified in paragraph 1 above, or should this Office, in its sole discretion, determine that Defendant failed to fully comply with any of the provisions of this agreement, Defendant agrees and understands that he will forego the benefits and concessions contained in this plea agreement, and waive any protection afforded by Section 1B1.8 of the Sentencing Guidelines, as well as any protection afforded by Federal Rules of Criminal Procedure 11(f) and Federal Rule of Evidence 410. Defendant further understands that in the event that for

any reason he does not plead guilty, the Factual Proffer signed by Defendant as part of this agreement will be fully admissible against him in any civil or criminal proceedings.

11. Defendant is aware that Title 28, United States Code, Section 1291 and Title 18, United States Code, Section 3742 afford Defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, Defendant hereby waives all rights conferred by Sections 1291 and 3742 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or an upward variance from the advisory guideline range that the Court establishes at sentencing. Defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b) and Title 28, United States Code, Section 1291. However, if the United States appeals Defendant's sentence pursuant to Sections 3742(b) and 1291, Defendant shall be released from the above waiver of his right to appeal his sentence.

12. Defendant further hereby waives all rights conferred by Title 28, United States Code, Section 1291 to assert any claim that (1) the statutes to which Defendant is pleading guilty is/are unconstitutional; and/or (2) the admitted conduct does not fall within the scope of the statute(s) of conviction.

13. By signing this agreement, Defendant acknowledges that Defendant has discussed the appeal waiver set forth in this agreement with Defendant's attorney. Defendant further agrees, together with this Office, to request that the Court enter a specific finding that Defendant's waiver of his right to appeal the sentence imposed in this case and his right to appeal his conviction in the manner described above was knowing and voluntary.

14. Defendant agrees, in an individual and any other capacity, to forfeit to the United States, voluntarily and immediately, any right, title, and interest to any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of the offense of his conviction in violation of Title 18, United States Code, Section 1349, pursuant to Title 18, United States Code, Section 981(a)(1)(C). In addition, Defendant agrees to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p). The property subject to forfeiture includes, but is not limited to:

    a. a forfeiture money judgement in the sum of $42,942,000 in U.S. currency, which sum represents the value of the property that is subject to forfeiture;

    b. directly forfeitable property and substitute property, including, but not limited to:

        i. All funds on deposit in JP Morgan Chase account number 410633486, held in the name of Pavel Ruiz;

        ii. All funds on deposit in Citibank account number 3198002403, held in the name of Pavel Ramon Ruiz Hernandez, or seized from this account on or about September 2, 2021;

        iii. All funds on deposit in Citibank account number 3490145105, held in the name of Pavel Ruiz MJCF LLC, or seized from this account on or about September 2, 2021;

        iv. All funds on deposit in Citibank account number 3290405412, held in the name of Pavel Ruiz MJCF LLC, or seized from this account on or about September 2, 2021;

        v. All funds on deposit in Wells Fargo account number 144810330, held in the name of Pavel R Ruiz Hernandez;

        vi. All funds on deposit in Venmo account @Pavel-Ruiz-1, held in the name of Pavel Ruiz;

        vii. All funds on deposit in Venmo account @PavelRuizMJCF, held in the name of Pavel Ruiz MJCF LLC; and

        viii. One (1) 2021 Audi RS7, bearing vehicle identification number WUAPCBF24MN907100.

15. Defendant further agrees that forfeiture is independent of any assessment, fine, cost, restitution, or penalty that may be imposed by the Court. Defendant knowingly and voluntarily agrees to waive all constitutional, legal, and equitable defenses to the forfeiture, including excessive fines under the Eighth Amendment to the United States Constitution. In addition, Defendant agrees to waive: any applicable time limits for administrative or judicial forfeiture proceedings, the requirements of Fed. R. Crim. P. 32.2 and 43(a), and any appeal of the forfeiture.

16. Defendant also agrees to fully and truthfully disclose the existence, nature and location of all assets in which Defendant has or had any direct or indirect financial interest or control, and any assets involved in the offense of conviction. Defendant agrees to take all steps requested by the United States for the recovery and forfeiture of all assets identified by the United States as subject to forfeiture. This includes, but is not limited to, the timely delivery upon request of all necessary and appropriate documentation to deliver good and marketable title, consenting to all orders of forfeiture, and not contesting or impeding in any way with any criminal, civil or administrative forfeiture proceeding concerning the forfeiture.

17. In furtherance of the satisfaction of a forfeiture money judgment entered by the Court in this case, Defendant agrees to the following:

    a. submit a financial statement to this Office upon request, within 14 calendar days from the request;

    b. maintain any asset valued in excess of $10,000, and not sell, hide, waste, encumber, destroy, or otherwise devalue such asset without prior approval of the United States;

    c. provide information about any transfer of an asset valued in excess of $10,000 since the commencement of the offense conduct in this case to date;

      d.    cooperate fully in the investigation and the identification of assets, including liquidating assets, meeting with representatives of the United States, and providing any documentation requested; and

      e.    notify, within 30 days, the Clerk of the Court for the Southern District of Florida and this Office of: (i) any change of name, residence, or mailing address, and (ii) any material change in economic circumstances.

Defendant further understands that providing false or incomplete information about assets, concealing assets, making materially false statements or representations, or making or using false writings or documents pertaining to assets, taking any action that would impede the forfeiture of assets, or failing to cooperate fully in the investigation and identification of assets may be used as a basis for: (i) separate prosecution, including, under 18 U.S.C. § 1001; or (ii) recommendation of a denial of a reduction for acceptance of responsibility pursuant to the United States Sentencing Guidelines § 3E1.1.

    18.    Defendant recognizes that pleading guilty may have consequences with respect to Defendant's immigration status if Defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including Defendant's attorney or the Court, can predict to a certainty the effect of Defendant's conviction on Defendant's immigration status. Defendant nevertheless affirms that Defendant wants to plead guilty regardless of any immigration consequences that Defendant's plea may entail, even if the consequence is Defendant's automatic removal from the United States.

19. This is the entire agreement and understanding between this Office and Defendant. There are no other agreements, promises, representations, or understandings.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

Date: 4/26/23    By: _____
Eric E. Morales
Assistant U.S. Attorney

Date: 4/26/23    By: _____
MICHAEL MIRER, ESQ.
ATTORNEY FOR DEFENDANT

Date: 4/26/23    By: _____
PAVEL RUIZ
DEFENDANT